**GORDON LAW GROUP**
400 Central Ave. Suite 340
Northfield, IL 60093
Andrew Gordon, Esq.
(IL Bar #6309109)
Tel. (847) 580-1279
ABG@Gordonlawltd.com
(seeking pro hac vice admission)

**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Daniel R. Warner, Esq. (AZ Bar # 026503)
Email: dan@kellywarnerlaw.com
Aaron M. Kelly, Esq. (AZ Bar #025043)
Email: aaron@kellywarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Digital Altitude, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NetCents Technology, Inc.<br><br>　　　　Defendant. | No. _____<br><br>**COMPLAINT FOR DAMAGES** |

COMES NOW the plaintiff Digital Altitude, LLC. by and through its attorneys of record, and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Digital Altitude, LLC ("Digital Altitude") is an LLC organized under the laws of the state of Delaware, and with its principal place of business in California.

2. NetCents Technology, Inc. ("NetCents") is a Corporation organized under the laws of Canada with its principal place of business in Canada.

3. Timothy Rocho ("Rocho") is an agent of NetCents who maintains a mailing address located in Mesa, Arizona. Rocho also possesses an Arizona phone number.

4. Upon information and belief, NetCents, by and through Rocho, entered into the underlying contract at issue in Maricopa County, Arizona.

5. Upon information and belief, by entering into the underlying contract at issue in Arizona, NetCents purposefully availed itself of the privilege of conducting activities in Arizona, thereby invoking the benefits and protections of its laws. Accordingly, NetCents is subject to the personal jurisdiction of this Court concerning the underlying contract at issue and claims arising therefrom.

6. Subject matter jurisdiction in this matter is proper based on the diversity of the parties, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), both as required under 28 U.S.C. §1332(a)(2).

7. Venue of this matter is proper in the United States District Court for the District of Arizona, pursuant to 28 U.S.C §1391(a), as a substantial part of the events giving rise to the claim set forth herein occurred in this judicial district.

**FACTS**

8. Digital Altitude operates in the digital sales of educational material. The business provides online training, coaching and events designed to help its customers improve their ability to market products in an online environment.

9. Digital Altitude accepts all payments from its customers via credit card and thereby considers itself to be a merchant. Consumers are sometimes fickle, credit card transactions are sometimes refunded and or coded as a "chargeback", an industry term

whereby a consumer disputes the appropriateness of their charge with the credit card company.

10. The banking system behind credit card processing involves a complex series of exchanges involving numerous entities. These entities include, on one side, the consumer and the consumer's bank and, on the other, the merchant and the merchant's bank; between them are the credit card networks and other third parties such as "independent sales organizations' involved in processing a transaction.

11. NetCents operates in part and during the relevant period at issue, as an independent sales organization ("ISO"), oftentimes also referred to as a Merchant Processor, which solicits merchants seeking to open credit card merchant accounts and refers them to the ISO's acquiring bank ("acquirer"), which is the bank that has access to the credit card networks.

12. NetCents, in part and during the relevant period at issue, is a Merchant Processor. A Merchant Processor is a company that processes credit and debit card transactions for remittance to the Merchant. Merchant Processors perform their services, such as processing payments and issuing refunds and chargebacks to consumers, for a base fee which is generally a certain percentage of each transaction. In addition, the Merchant Processors charge other service fees for actions such as refunds and chargebacks.

13. Merchant Processors process payments for Merchants, but may keep a portion of the proceeds of the payments as a reserve for a set period of time to ensure against loss from chargebacks and refunds. A typical reserve time may be 30-60 days; but no longer than six months.

3

14. Digital Altitude and NetCents were connected through NetCents' agent, Rocho, on or around September 2016. Rocho provided Digital Altitude with a copy of NetCents' application.

15. On October 14, 2016, Digital Altitude tendered a New Merchant Account Application to NetCents via Rocho, the "Submitting Agent".

16. On or around October 24, 2016 Rocho met with a Board member of NetCents at the time named Frasier McDougal ("McDougal") to discuss NetCents acting as a Merchant Processor for Digital Altitude and other potential clients of his. At this meeting, Rocho made it clear to McDougal that NetCents needed to have the desire and capability, experience and banking relationships to process high volumes of transactions or the business relationship with Digital Altitude would not work as Digital Altitude desired to process high volume purchases.

17. NetCents approved Digital Altitude's application to act as a Merchant Processor on or about October 28, 2016.

18. NetCents' fee for processing Digital Altitude's credit card payments was agreed to be 3.5% of each transaction plus forty (40) cents per transaction. NetCents was to hold 10% of transaction dollars as a reserve against chargebacks or refunds, for a time period not to exceed six months.

19. On or about November 1, 2016 NetCents began to process credit card transactions on behalf of Digital Altitude.

20. On November 2, 2016 NetCents announced the contract with Digital Altitude via a press release. A subsequent press release providing an update on the

agreement was published on November 9, 2016.

21. Between November 1, 2016 and November 12, 2016 NetCents processed $779,960.72 of credit card transactions on behalf of Digital Altitude.

22. On November 10, 2016, NetCents CEO Gordon Jessop ("Jessop") sent an email to Digital Altitude advising that its processor, which Digital Altitude has taken to mean its acquirer, had determined that the transactions are of higher risk and are therefore withholding the remittance of $245,000 to NetCents until February 6th, 2017. Nevertheless, Jessop further acknowledged that NetCents would continue to process Digital Altitude's transactions.

23. NetCents halted Digital Altitude's payments as of November 13, 2016.

24. Rocho met with Jessop in person, in Scottsdale, Arizona, in or about December 2016 to discuss NetCents continuing to act as a Merchant Processor for Digital Altitude. At this meeting, he articulated to Jessop that Digital Altitude required a Merchant Processor that was capable of processing a very high volume of transactions. Jessop reiterated to him that NetCents had the capabilities of processing such accounts. NetCents also wanted to continue to do business with Digital Altitude and were working with new partners (banks, etc.) to resume processing this business.

25. On February 13, 2017 NetCents remitted payment to Digital Altitude in the amount of $424,980.

26. NetCents continued to hold the balance of the funds owed to Digital Altitude through June of 2017, claiming that a processor they used was holding the remaining funds to process refunds or chargebacks that may continue to come in, for up to six months.

5

27. On June 14, 2017, Clayton Moore, a representative for NetCents emailed Mary Dee ("Dee"), a representative for Digital Altitude, to advise that "A wire for the remaining balance to Digital Altitude will be sent next week – Thursday or Friday."

28. On June 26, 2017, Jessop emailed Dee to advise that NetCents would in fact not be releasing the funds owed to Digital Altitude. In relevant part, the email states "As we confirmed last week, the funds were released into our account. We now hold those funds…" and "…we do acknowledge monies are owing to Digital Altitude".

29. As a result of not having access to its property, Digital Altitude has been left unable to fully service its client base and to pay its creditors.

30. Digital Altitude has been forced to obtain large cash advances as result of the lack of access to its own funds. This has cost Digital Altitude $67,500 in lost revenue.

31. As of the date of filing, the $327,405 remains in the possession of NetCents.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (NETCENTS HAS CONVERTED PROPERTY OF DIGITAL ALTITUDE)

32. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

33. Digital Altitude has an undisputed right to possess the funds for which it was paid to perform a service for its clients.

34. NetCents has intentionally exercised dominion or control over funds belonging to Digital Altitude.

35. NetCents has deprived Digital Altitude of possession and use of the funds

6

to which it is holding.

36. NetCents' continued unauthorized control over the property of Digital Altitude has substantially impaired Digital Altitude's ability to operate as a profitable enterprise.

37. NetCents' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein NetCents intended to harm Digital Altitude and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Digital Altitude.

38. To dissuade NetCents from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against NetCents in the sum of sufficient magnitude to punish NetCents and to deter similar conduct by others.

## SECOND CLAIM FOR RELIEF
### (NETCENTS HAS BREACHED ITS CONTRACT WITH DIGITAL ALTITUDE)

39. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

40. NetCents offered to process Digital Altitude's credit card transactions in return for a percentage of each transaction.

41. Digital Altitude accepted the terms of the NetCents offer and began to have NetCents process their credit card payments on November 1, 2016.

42. NetCents was to be compensated for processing Digital Altitude's payments in the form of 3.5% of each transaction.

43. NetCents was obligated to forward the funds obtained from processing the

credit card payments to Digital Altitude in a time frame not to exceed six months. NetCents has breached its contractual obligation to provide Digital Altitude with its proceeds within this timeframe.

44. NetCents has admitted that it owes the funds to Digital Altitude but, without sufficient basis, has advised it will not be returning the money.

45. As a direct and proximate result of NetCents' breach of the contract, Digital Altitude has been damaged in an amount of no less than $327,405, plus $67,500 in lost revenue, as well as attorneys' fees, costs and interest.

46. This matter arises out of contract; thus, Digital Altitude is entitled to recover costs and reasonable attorneys' fees from NetCents pursuant to the contract, A.R.S. §12-341.01, A.R.S. §12-341, and/or other applicable law.

### THIRD CLAIM FOR RELIEF
### (NETCENTS HAS BEEN UNJUSTLY ENRICHED)

47. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

48. As alleged above, NetCents was obligated to forward the funds obtained from processing the credit card payments to Digital Altitude in a time frame not to exceed six months.

49. Without any legal justification, NetCents has failed and refused to return the $327,405 owed to Digital Altitude.

50. By failing and refusing to return the $327,405 owed to Digital Altitude, NetCents has been unjustly enriched and Digital Altitude has been improvised.

51. To the extent Digital Altitude's breach of contract claim is not legally

8

sustainable and/or the contract at issue is not enforceable, Digital Altitude is without any adequate remedy at law, and NetCents should be required to make restitution to Digital Altitude.

52. This matter arises out of contract; thus, Digital Altitude is entitled to recover costs and reasonable attorneys' fees from NetCents pursuant to the contract, A.R.S. §12-341.01, A.R.S. §12-341, and/or other applicable law.

### FOURTH CLAIM FOR RELIEF
### (NETCENTS HAS BREACH ITS DUTY OF GOOD FAITH)

53. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

54. The law implies a covenant of good faith and fair dealing in every contract. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits, which flow from their agreement or contractual relationship.

55. Pursuant to the agreement between the parties, NetCents was obligated to forward the funds obtained from processing the credit card payments to Digital Altitude in a time frame not to exceed six months.

56. By failing and refusing to provide Digital Altitude with its proceeds within the reasonably expected timeframe, NetCents acted in a manner that denied Digital Altitude its reasonably expected benefits under the agreement.

57. To the extent NetCents had any discretion to delay or withhold releasing the proceeds within the six month period, or in excess thereof, NetCents abused and exercised its discretion in a manner that denied Digital Altitude its reasonably expected benefits under the agreement.

58. As a direct and proximate result of NetCents' conduct, Digital Altitude has been damaged in an amount of no less than $327,405, plus $67,500 in lost revenue, as well as attorneys' fees, costs and interest.

59. This matter arises out of contract; thus, Digital Altitude is entitled to recover costs and reasonable attorneys' fees from NetCents pursuant to the contract, A.R.S. §12-341.01, A.R.S. §12-341, and/or other applicable law.

## **PRAYER FOR RELIEF**

Plaintiff demands judgment against the Defendant as follows:

A. For direct damages in the amount of $327,405;

B. For punitive damages in an amount to be proven at trial;

C. For consequential damages in the amount of $67,500;

D. For other general and special damages in an amount to be proven at trial;

E. For Plaintiff's costs herein incurred;

F. For Plaintiff's reasonable attorneys' fees incurred herein, which are not less than $10,000.00 in the event of default;

G. For interest on the foregoing attorneys' fees and court costs at the statutory interest rate from the date of judgment until paid;

H. For prejudgment and post-judgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

I. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of September, 2017.

/s/ Andrew Gordon
Andrew Gordon, Esq.
IL Bar #6309109
(seeking pro hac vice admission)
**GORDON LAW GROUP**
400 Central Ave. Suite 340
Northfield, IL 60093
Tel. (847)580-1279
ABG@Gordonlawltd.com

and

/s/ Daniel R. Warner
Daniel R. Warner, Esq.
Arizona Bar # 026503
**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Tel: 480-331-9397
Fax: 1-866-961-4984
Email: dan@kellywarnerlaw.com
*Attorneys for Plaintiffs*

## VERIFICATION OF COMPLAINT

I, Mary Dee, declare as follows:

1. I am a duly-authorized representative of Plaintiff Digital Altitude, LLC, named in the matter to be filed in the United States District Court, for the District of Arizona, entitled DIGITAL ALTITUDE, LLC v. NETCENTS TECHNOLOGY, INC., and I am authorized to make this Declaration/Verification.

2. I am over the age of 18 years, and if called to testify in court I could and would truthfully testify to the following information based upon my own personal knowledge.

3. I am writing this Declaration to verify the accuracy of the Complaint to be filed in this matter.

4. I have read and know the contents of the Complaint, and the matters and things therein stated are true and correct to the best of my knowledge and belief.

5. All of the following matters and factual matters set forth in the Complaint are within my personal knowledge.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED ON: September 26 2017.

*/s/ Mary Dee*